IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MEHDI MOLLAHASANI**, <br> c/o Friedman, Gilbert + Gerhardstein <br> 50 Public Square, Suite 1900 <br> Cleveland, Ohio 44113, <br><br> Plaintiff, <br><br> -vs- <br><br> **CITY OF CLEVELAND** <br> **SERGEANT #9201** <br> **OFFICER #581** <br> **OFFICER #820** <br> **OFFICER CORRIGAN #1076** <br> **OFFICER ROMAIN** <br> **OFFICER MCFADDEN** <br> c/o Cleveland Department of Law <br> 601 Lakeside Avenue, Room 106 <br> Cleveland, Ohio 44114, <br><br> Defendants. | **CASE NO.** <br><br> **JUDGE** <br><br><br><br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Mehdi Mollahasani, for his complaint against Defendants Cleveland Police Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden, alleges as follows:

### INTRODUCTION

1. This is a civil rights action. On Saturday May 30, 2020, downtown Cleveland, like many cities nationwide, was the center of protests against racial injustice and police brutality. The City of Cleveland instated a broad curfew covering the entire downtown area and set up barricades preventing civilians from entering the downtown area.

1

2. Mehdi Mollahasani, a downtown Cleveland resident, was not involved in those protests. On Sunday May 31, Mehdi attempted to walk from his apartment on East 9th Street to pick up a grocery delivery. The delivery driver was prevented from delivering straight to Mehdi's home due to barricades disallowing vehicles' entrance and exit into the city center. Though he showed identification and proof of downtown residence to the defendant officers, Mehdi, an Iranian Canadian man, was arrested, incarcerated in the Cuyahoga County Corrections Center until June 2, 2020, and prosecuted. The criminal charge against him was eventually dismissed.

3. Defendants' unnecessary actions violated Plaintiff Mollahasani's rights under the United States Constitution and the laws of the State of Ohio.

### JURISDICTION AND VENUE

4. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

5. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

### PARTIES

7. Plaintiff Mehdi Mollahasani, at all times relevant to the allegations made in the Complaint, resided in the City of Cleveland, in Cuyahoga County, Ohio.

8. Defendant City of Cleveland is an Ohio municipal corporation that operates the Cleveland Division of Police (CDP). Defendant City of Cleveland is a unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant City is a "person" under 42 U.S.C. § 1983. Defendant City is the employer and principal of Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden and is responsible for the policies, practices, and customs of the Cleveland Division of Police.

9. Defendant Police Officers Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden were, at all times relevant to the allegations made in this complaint, duly appointed police officers employed by the Cleveland Division of Police, acting within the scope of their employment and under the color of state law. They are sued in their individual capacities.

#### FACTS

10. On May 30, 2020, hundreds of protestors filled the streets of downtown Cleveland. In response, mayor Frank Jackson instilling a curfew for the downtown area. Cleveland Police officers moved quickly to arrested and detained many of these protestors and other people present in the downtown area.

11. Plaintiff Mehdi Mollahasani was not one of these protesters. Instead, he was in the downtown area because he was residing in an apartment on East 9th Street.

12. Mollahasani ordered groceries to be delivered to his apartment.

13. Due to police blocking off entrances to the downtown area, the grocery delivery worker told Mehdi that he would have to walk to meet her outside the police barricades.

14. Mehdi began walking toward St. Clair Avenue and East 40th Street, where he arranged to meet with the grocery delivery worker.

15. As a resident of Cleveland, Mehdi's actions did not violate any curfew.

16. At East 12th Street and Euclid Avenue, Mehdi encountered a Cleveland Police cruiser. Remaining inside the cruiser, an officer asked Mehdi where he was going; Mehdi explained he was walking to pick up groceries.

17. These officers understood and drove away.

18. Mehdi continued walking, and at East 13th Street and Euclid Avenue, was approached by a group of Cleveland Police officers on foot.

19. Mehdi again explained, just as he had moments before, that he was walking to pick up a grocery delivery because his delivery driver wasn't able to enter the downtown area.

20. Due to the ongoing COVID-19 pandemic, Mehdi was concerned about the lack of social distance between himself and this group of Cleveland police officers.

21. Mehdi asked that officers respect the six-foot distance rule, and a Defendant officer stepped closer to him, saying, "we're not playing here, give me your ID."

22. Mehdi, having prepared for this and knowing that his New York driver's license did not match his current residence, produced a paystub with his Cleveland address and his New York license.

23. Once he produced his New York license to officers, Sergeant No. 9201 ordered that the officers Mehdi was speaking with arrest him.

24. Mehdi tried to explain that his current residence was in Cleveland, and again explained that he was just walking to pick up his grocery delivery.

25. Mehdi complied with all of the orders of the Defendant officers during this interaction.

26. Mehdi, who was dressed in black, even told the Defendant officers, "I'm not a looter," and Sergeant No. 9201 told Mehdi, "you look like one."

27. Mehdi was cuffed and sat on the ground while the Defendant officers continued to question him.

28. The Defendant officers had no reasonable suspicion or probable cause to arrest Mollahasani.

29. Mehdi produced proof of his grocery delivery order through the Instacart app, which displayed the address of his residency, matching the one he had shown proof of before being arrested.

30. Even after presented with this evidence verifying Mehdi's story, the Defendant officers and Sergeant No. 9201 continued to detain Mehdi.

31. Mehdi was eventually transported to the Cuyahoga County Corrections Center, where he was incarcerated for two nights. He was finally released without charges on June 2, 2020.

32. On June 9, though all Cleveland Police and Cuyahoga County Corrections Center documents listed "curfew" as the reason for his arrest, Mehdi was charged with failure to comply in Cleveland Municipal Court, case number 2020 TRD 010688.

33. On October 8, 2020, the criminal charge was dismissed. The journal entry notes the reason for dismissal was "groceries/Instacart order."

34. The Defendant officers' actions were without reasonable suspicion or probable cause, were unjustified, objectively unreasonable, and constitute deliberate indifference.

35. Defendants engaged in willful, wanton, reckless, and/or negligent conduct.

36. Each Defendant officer had the duty and opportunity to intervene to prevent the violations of Mehdi's rights, yet did nothing to assist or protect him or stop the violations.

37. The Defendant officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, misleading, incomplete versions of the events to their superiors in order to cover up their misconduct.

38. The actions of the Defendants were taken jointly, in concert, and with shared intent.

39. Defendant officers' actions, as alleged in the preceding paragraphs, were performed under color of law and deprived Plaintiff of federally protected rights, in violation of Title 42 U.S.C. §1983.

40. Defendants' conduct was the direct, actual, and proximate cause of Plaintiff's injuries.

41. As a direct and proximate result of Defendants' conduct, Plaintiff sustained injuries, including, *inter alia*, fear, stress, anxiety, injury, emotional distress, embarrassment, humiliation, loss of liberty, costs, and potential exposure to COVID-19.

42. The injuries suffered were all preventable had Defendants not engaged in illegal conduct in violation of Plaintiff's fundamental rights.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for False Arrest
### against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden

43. All of the foregoing paragraphs are incorporated as though fully set forth here.

44. As described above, the Defendant officers, acting individually, jointly, and in conspiracy with each other, caused Mehdi Mollahasani to be unreasonably seized, detained, imprisoned and deprived of his liberty without probable cause to believe that he had committed a

crime, in violation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, and/or failed to prevent this misconduct in spite of having the duty and opportunity and means to intervene to protect him.

45. The Defendant Officers were acting under color of law and within the scope of their employment when they took these actions.

46. As a direct and proximate result of the Defendants' actions, Mehdi Mollahasani's constitutional rights were violated and he suffered and continues to suffer injury and damages as set forth in this Complaint.

47. Defendants are jointly and severally liable for this conduct.

### SECOND CLAIM FOR RELIEF
**42 U.S.C. § 1983 Claim for Unlawful Seizure – Extended Detention
against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden**

48. All of the foregoing paragraphs are incorporated as though fully set forth here.

49. Defendants caused Plaintiff Mehdi Mollahasani to not be brought before the available judges or released from custody in a timely manner. The delay was unnecessary, and motivated to interfere with and retaliate against the exercise of constitutional rights.

50. Defendants' policy and practice of holding Mehdi Mollahasani—who they believed was a protestor— in custody for longer than necessary, and increasing the length of custody for an improper motive, violated Plaintiffs' Fourth Amendment right to be free from an unreasonable seizure.

51. As a direct and proximate result of the Defendants' actions, Mehdi Mollahasani's constitutional rights were violated and he suffered and continues to suffer injury and damages as set forth in this Complaint.

## THIRD CLAIM FOR RELIEF
**42 U.S.C. § 1983 - Fourth and Fourteenth Amendments: Malicious Prosecution against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden**

52. All of the foregoing paragraphs are incorporated as though fully set forth here.

53. In the manner described more fully above, the Defendant Officers, acting individually, jointly, and in conspiracy with each other, instigated, influenced, or participated in the decision to prosecute Mehdi Mollahasani, and there was no probable cause for the criminal prosecution. As a consequence of the criminal prosecution, Plaintiff suffered a deprivation of liberty apart from his initial seizure. Plaintiff's criminal prosecution was terminated in his favor in a manner indicative of innocence.

54. The Defendant officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and the Defendant officers made statements to other officers and/or to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

55. In the manner described more fully above, the Defendant officers' misconduct denied Plaintiff his constitutional rights to procedural due process under the Fourteenth Amendment and rights under the Fourth Amendment to be free from continued detention without probable cause.

56. Furthermore, in the manner described more fully above, the Defendant officers, acting individually, jointly, and in conspiracy with each other, deliberately engaged in arbitrary conduct that contravened fundamental canons of decency and fairness and violated Plaintiff's substantive due process rights under the Fourteenth Amendment.

57. The Defendant officers were acting under color of law and within the scope of their employment when they took these actions.

58. As a direct and proximate result of the Defendants' actions, Mehdi Mollahasani's constitutional rights were violated and he suffered and continues to suffer injury and damages as set forth in this Complaint.

59. Defendants are jointly and severally liable for this conduct.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 *Monell* Claim**
**against Defendant City of Cleveland**

60. All of the foregoing paragraphs are incorporated as though fully set forth here.

61. The constitutional violations by Defendants and/or their employees/subordinates/agents as set forth in this Complaint are not an isolated incident. The City of Cleveland has a history of improperly arresting people during times of protest.

62. On May 23, 2015, following the not-guilty verdict in the trial of Michael Brelo, the Cleveland police officer charged with two counts of voluntary manslaughter for the deaths of Timothy Russell and Malissa Williams, protesters gathered in downtown Cleveland. Cleveland Police improperly detained and arrested protesters, and caused them to be incarcerated until May 25, charged and prosecuted criminally. The criminal cases were eventually dismissed. Several of these arrestees sued the City of Cleveland for violating their Constitutional Rights. The City of Cleveland settled their claims.

63. The Division of Police admitted its policy of arresting and holding people in order to remove them from the streets during times of protest. On June 24, 2015, when Cleveland Deputy Chief of Police Dornat "Wayne" Drummond was asked why protesters charged with low-level misdemeanors were arrested instead of cited and immediately released, he explained, "I'll let the Law Department respond to your concerns, but from my perspective, it doesn't make much sense to cite and release the protestors and let them back out on the streets to protest again."

64. Similarly, on July 20, 2016, during the Republican National Convention in Cleveland, Cleveland Division of Police officers wrongfully arrested a number of protesters for their involvement in First Amendment-protected activity. These protesters were detained, charged criminally, and prosecuted for months. Eventually, every charge was dismissed.

65. On May 30, 2020 and in the days thereafter, Cleveland Police arrested 120 people, many of whom were arrested for alleged violations of the curfew. According to Cleveland.com, as of December 2020, over 50 of these cases have been dismissed.

66. The conduct of Defendants and/or their employees/subordinates/agents as set forth in this Complaint resulted from and were taken pursuant to one or more interrelated City of Cleveland policies (even if not official written edicts), practices, and/or customs of civil rights violations and unconstitutional practices.

67. Defendant City of Cleveland, at all times relevant herein, ratified, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

68. At all times relevant, the Defendant City of Cleveland had interrelated de facto policies, practices, and customs which included, *inter alia*:

   a. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in false arrest, unreasonable seizures, and malicious prosecutions;

   b. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs related to police engaging in false arrest, unreasonable seizures, and malicious prosecutions;

   c. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in fabrication of statements, reports, and testimony;

      d. the code of silence.

69. The aforementioned de facto policies, practices, and customs of the City of Cleveland lead to harmful consequences to people who are the victims of police encounters within the City limits, including Plaintiff.

70. Moreover, the conduct of Defendant City of Cleveland and/or its employees/subordinates/agents demonstrates the City of Cleveland's custom of tolerance or acquiescence of civil rights violations and unconstitutional practices.

71. The Defendant officers committed their misconduct in light of and because of the policy, practice, and custom of the code of silence among City of Cleveland police officers. Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

72. The policies, practices, and customs of the Defendant City and the Division of Police were the moving force behind the misconduct described in this Count and behind the violations of Plaintiff's rights. The widespread practices were so well settled as to constitute *de facto* policy in the CDP, were part of CDP's culture, and were allowed to exist because municipal policymakers with authority over the practices exhibited deliberate indifference to the problems, effectively ratifying them.

73. In addition, the Defendants' misconduct was undertaken pursuant to the policy and practices of the Defendant City and the CDP in that the violation of Plaintiff's rights, and as a result of conduct by the City's relevant final policymaker or the persons to whom final policymaking authority had been delegated.

74. The actions of the Defendant Officers were approved, encouraged, and/or ratified by policymakers for the Defendant City and the CDP with final policymaking authority.

75. The policy, practice, and custom of a code of silence results in police officers refusing to report instances of misconduct of which they are aware, including the type of misconduct describe in this complaint, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

76. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, investigate, discipline, transfer, counsel and/or control officer misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize lying and immunize officers from discipline.

77. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread City policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and other officials and officers of the Cleveland Division of Police.

78. The City of Cleveland, at all times relevant herein, was deliberately indifferent to, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

79. The City of Cleveland therefore acted as the moving force behind and the direct and proximate causes of the violations of Plaintiff's constitutional rights and all injuries and damages suffered by him.

80. Defendants are jointly and severally liable for this conduct.

### FIFTH CLAIM FOR RELIEF
### State Law Claim for False Arrest
**against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden**

81. All of the foregoing paragraphs are incorporated as though fully set forth here.

82. Defendants intentionally and unlawfully detained and caused the arrest of Mehdi Mollahasani without lawful privilege, against his consent, and without probable cause.

83. Mehdi Mollahasani's arrest, unsupported by probable cause, was in violation of the law of the State of Ohio.

84. Defendants caused the illegal arrest, detention, imprisonment and institution of legal proceedings against Plaintiff.

85. Defendants' actions were willful, wanton, and/or reckless.

86. Defendants' actions and conduct constitute false arrest, in violation of Ohio law.

87. As a direct and proximate result of Defendants' misconduct, Mehdi Mollahasani suffered and continues to suffer injuries and damages as set forth in this Complaint.

88. Defendants are jointly and severally liable for this conduct.

### SIXTH CLAIM FOR RELIEF
### State Law Claim for Malicious Prosecution
**against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden**

89. All of the foregoing paragraphs are incorporated as though fully set forth here.

90. Defendants acted with malice to initiate and/or maintain prosecution of Plaintiff without probable cause, causing Plaintiff to suffer a loss of liberty.

91. The prosecution was terminated in Plaintiff's favor.

92. Defendants engaged in actions and conduct that constituted malicious prosecution in violation of Ohio law.

93. As a direct and proximate result of the Defendants' actions, Mehdi Mollahasani's rights were violated and he suffered and continues to suffer injury and damages as set forth in this Complaint.

### SEVENTH CLAIM FOR RELIEF
**State Law Claim for Abuse of Process
against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden**

94. All of the foregoing paragraphs are incorporated as though fully set forth here.

95. Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Corrigan, Romain, and McFadden, while acting under the color of law, by instituting a legal proceeding, did so in an attempt to accomplish an ulterior purpose for which it was not designed and that proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and direct damage has resulted from the wrongful use of process.

96. Defendants Sergeant No. 9201's, Officer No. 581's, Officer No. 820's, Corrigan's, Romain's, and McFadden's abuse of this process constitutes a deprivation of the Plaintiff's right to due process.

97. As a direct, proximate and foreseeable result of Defendants' actions, Plaintiff suffered and continues to suffer injuries and damages as set forth in this Complaint.

### EIGHTH CLAIM FOR RELIEF
**State Law Claim for Negligence – Willful, Wanton and Reckless Conduct
against Defendants Sergeant No. 9201, Officer No. 581, Officer No. 820, Officer Corrigan, Officer Romain, and Officer McFadden**

98. All of the foregoing paragraphs are incorporated as though fully set forth here.

99. Defendant officers acted negligently when they violated their duty to exercise due care for Mehdi Mollahasani.

100. Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as Cleveland Division of Police officers.

101. As a direct and proximate result of the Defendants' actions, Mehdi Mollahasani's rights were violated and he suffered and continues to suffer injury and damages as set forth in this Complaint.

102. Defendants are jointly and severally liable for this conduct.

### PRAYER FOR RELIEF

Plaintiff demands that judgment be entered in his favor on all counts and prays the Court award the following relief:

A. Actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate him for the violation of his rights, and for the injuries and damages he suffered;

B. Punitive damages against all Defendants in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

C. Attorney fees and the costs of this action and other costs that may be associated with this action pursuant to 42 U.S.C. § 1988; and

D. All other relief which this Honorable Court deems equitable and just.

***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***

Dated: January 26, 2021

/s/ Sarah Gelsomino
Sarah Gelsomino (0084340)
Terry H. Gilbert (0021948)
Marcus Sidoti (0077476)
FRIEDMAN, GILBERT + GERHARDSTEIN

50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
terry@FGGfirm.com
marcus@FGGfirm.com

Jacqueline Greene (0092733)
FRIEDMAN, GILBERT + GERHARDSTEIN
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: 513-621-9100
F: 216-621-0427
jacqueline@FGGfirm.com

*/s/ Eric F. Long*
ERIC F. LONG (0093197)
FRIEDMAN & NEMECEK, L.L.C.
1360 E. 9th Street, Suite 650
Cleveland, OH 44114
T: 216-928-7700
efl@fanlegal.com

*Counsel for Plaintiff*